UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-61094-CV-SEITZ
          (12-20420-CR-GONZALEZ)
MAGISTRATE JUDGE P. A. WHITE

PHILLIP MIKLE,                    :

      Movant,                   :

v.                               :        **REPORT OF**
                                          **MAGISTRATE JUDGE**
UNITED STATES OF AMERICA,  :

      Respondent.               :
_____

## Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction for possession with intent to distribute crack cocaine in case no. 12-20420-CR-GONZALEZ.

The Court has reviewed the movant's amended motion (CV-DE# 8), the government's response with multiple exhibits (CV-DE# 10), the movant's reply (CV-DE# 16) and all pertinent portions of the underlying criminal file.

Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant raises the following claims:

1. Counsel was ineffective by failing to conduct further investigation into police misconduct due to her conflict of interest based upon having family members who were police.

2. Counsel was ineffective for advising the movant to stipulate to the fact that laboratory testing found the substances were crack cocaine and cocaine powder.

3.    Counsel's advice to the movant to stipulate to the
nature of the substances was a direct result of her
conflict of interest.

4.    The government failed to correct false testimony.

5.    The movant has reserved the right to challenge
prior convictions not listed in the indictment.[1]

6.    Prosecutor's personal opinions of the facts
deprived the movant of a fair trial.

### Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged by Indictment with possession with intent to distribute cocaine and cocaine base (Count 1), unlawful possession of a firearm by a convicted felon (Count 2), and use of a firearm in furtherance of a drug trafficking crime (Count 3).

During the early morning hours of January 1, 2012 Officer Herzen Bain was on patrol with his partner Officer Joseph Solis. They observed a vehicle driving without its lights. After activating the emergency lights they followed the car for several blocks. They activated their siren and attempted to communicate with the driver via a P.A. speaker. They briefly lost sight of the speeding vehicle but located it moments later after it had struck a pole and came to a stop.

Officer Bain gave chase on foot after the movant exit the car from the passenger side and fled. Officer Solis went ahead in the police car to attempt to intercept the movant. During the pursuit Officer Bain observed the movant drop a gun.

---

[1]The movant has listed this a ground for relief but has provided no argument in support.

The movant was apprehended when he encountered Officer Solis as Officer Bain approached from behind. Officer Bain later found the gun along the route the movant had taken during his attempt to flee. During a search of the movant, Officer Moises Joseph and Officer Solis revealed a skully cap containing small Ziploc bags filled with crack and powder cocaine.

Defense counsel questioned Officer Bain about his arrest affidavit and other documents prepared after the arrest. Counsel pointed out that Officer Bain had mistakenly noted on his report that the gun was found on the movant. Counsel also noted that Officer Bain had recorded that 28 Ziploc bags of drugs were found on the victim even though there was no victim. It was also pointed out that Officer Bain had mistakenly noted that he had found the drugs although they had been found by Officer Solis. Officer Bain acknowledged that he knew the movant from the neighborhood and may have "run him" a few times. Officer Bain also identified his phone number, which had been provided to counsel by the movant. When questioned if the movant had provided him with alcohol and prostitutes, Officer Bain denied such had occurred.

During cross examination of Officer Solis, defense counsel pointed out that the arrest report reflected that Officer Bain had found the drugs. Officer Solis acknowledged that it was an error. Officer Solis also acknowledged that the address listed as the location where the drugs were found was also incorrect. He further acknowledged that one of the Ziploc bags had gone missing at some point after the search and that he did not see the movant with a gun.

The movant presented the testimony of an investigator. The investigator spoke to the movant, reviewed discovery and obtained

police records. He also went to the scene and spoke to witnesses. He testified that a number provided to him by the movant was the cell phone number for Officer Bain. The investigator also spoke to a woman named Lahama Tremble. Tremble was a prostitute. The investigator spoke to her four times and she was subpoenaed for trial but did not appear. According to the investigator, Tremble corroborated the information provided by the movant, although content of this information was not presented.

In closing argument defense counsel's theme was the failure of Officer Bain to properly process the case. She first noted that Officer Bain failed to hand in DNA swabs for testing. She next argued that Officer Bain misdirected other responding officers who were assisting in the search for the gun, stressing that only Officer Bain saw the gun and that it was Officer Bain who found the gun. She next alluded to the one missing packet of drugs, noting that Officer Bain was responsible for turning in the drugs. Counsel further made note of the fact that Officer Bain failed to turn in the skully cap in which the drugs were found to be processed for DNA. She stressed the inaccuracies in the police reports prepared by Officer Bain, noting that the reports reflected that the drugs were found by him in contradiction to the testimony at trial. This theme continued throughout closing argument as counsel repeatedly questioned the conduct of Officer Bain.

The jury found the movant guilty only of Count 1, the possession charge and not guilty of Counts 2 and 3, the firearm charges. The movant was adjudicated guilty and sentenced to 20 years imprisonment. (CR-DE# 108).

On appeal the movant argued that his sentence was unreasonable given the small amount of cocaine. He also argued the trial court

erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his conviction for possession with intent to distribute where the trial testimony of the officers conflicted with the arresting officer's reports about who found the drugs. His conviction and sentence were affirmed on November 14, 2014. (CR-DE# 126).

This motion to vacate was timely filed thereafter on May 14, 2015, less than one year from the time the movant's conviction became final.[2] (Cv-DE#1).

## Discussion of Claims

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the results of the proceedings were not fundamentally unfair or unreliable. See

---

[2]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Here, the movant challenges counsel's effectiveness for multiple reasons. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's noncapital sentence would have been significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993); United States v. Bartholomew, 974 F.2d 39, 42 (5th Cir. 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. Id. at 697. However, a movant must establish that the sentence was increased due to counsel's deficient performance. Glover v. United States, 531 U.S. 198, 203-204 (2001).

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Finally, although the sentencing process may be reviewed by the district court on a §2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984); see also, Nelson v. United States, 709 F.2d 39, 40 (11th Cir. 1983)(citing, United States v. Diaz, 662 F.2d 713, 719 (11th Cir. 1981); United States v. Becker, 569 F.2d 951, 965 (5th Cir.), Cert. denied, 439 U.S. 865 (1978), United States v. White, 524 F.2d 1249, 1254 (5th Cir. 1975), cert. denied, 426 U.S. 922 (1976).); See also Williams v. Alabama, 403 F.2d 1019, 1020 (5th Cir. 1968)(§2254 habeas case)(sentence within statutory limits is generally not subject to constitutional attack); Castle v. United States, 399 F.2d 642, 652 (5th Cir.1968) (§2255 case)(sentence within statutory limits is not reviewable on appeal and does not amount to a constitutional violation). These former Fifth Circuit decisions are controlling authority in this circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Conflict of Interest Failure to Investigate

7

In his first claim the movant contends that counsel was ineffective for failing to conduct an investigation into police corruption. He alleges that counsel failed to conduct such an investigation due to a conflict of interest because her family included police officers and she refused to attack a policeman's reputation or jeopardize their jobs. He argues that an investigation would have revealed that one of the arresting officers had a motive to arrest the movant in order to stop him from being a witness against another police officer. He points out that his theory of defense was that "drugs were planted on him with a weapon." He continues by alleging that "obtainable evidence existed that could prove [he] was a **possible** target of police in Miami because of participation as a **potential** witness against other Miami police." (Emphasis added).

The movant provided counsel with the information about this alleged conspiracy. He further alleges that he was involved in very dangerous situation involving police misconduct. He claims to have written letters to an attorney regarding his involvement in a separate case. Although he as attached copies of these letters, he has not included any responses from the attorney indicating his involvement in another case. The extent of the movant's allegations are generalized claims of police misconduct on the part of Officer Herzen Bain, one of the arresting officers, and a contention that counsel failed to investigate these claims due to her conflict of interest.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an

attorney who is free from conflicts of interest." See <u>United States</u> <u>v. Ross</u>, 33 F.3d 1507, 1523 (11th Cir. 1994); <u>see</u> <u>also</u>, <u>Wood v.</u> <u>Georgia</u>, 450 U.S. 261, 271 (1981).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. <u>United States v. Novaton</u>, 271 F.3d 968, 1010-1011 (11 Cir. 2001), <u>citing</u> <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980); <u>accord</u>, <u>United States v. Ettinger</u>, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse effect is not entitled to relief. <u>United States v. Novaton</u>, 271 F.3d 968, 1010 (11 Cir. 2001); <u>Burden v. Zant</u>, 24 F.3d 1298, 1305 (11 Cir. 1994).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. <u>Novaton</u>, <u>supra</u> at 1010. Rather, "[p]rejudice is presumed . . . if the defendant demonstrates that . . . 'an actual conflict of interest adversely affected his lawyer's performance.'" <u>Strickland</u>, 466 U.S. at 692, <u>quoting</u>, <u>Cuyler</u>, 466 U.S. at 358; <u>Burden v. Zant</u>, 24 F.3d 1298 (11th Cir. 1994); <u>Porter v. Singletary</u>, 14 F.3d 554 (11th Cir. 1994).

Even assuming that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. <u>Strickland</u>, 466 U.S. at 694. To prove an

9

adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable"[3] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[4] <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u> <u>Freund v. Butterworth</u>, 165 F.3d 839, 860 (11 Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. <u>Id</u>.

In the instant case the movant cannot establish that any alleged conflict had an adverse effect on counsel's performance. The movant alleges that counsel told him she would not impugn a police officer's reputation because she had family members who were police officers. However, contrary to the movant's allegations counsel repeatedly attacked the credibility of the police witnesses during cross examination and in closing argument. Counsel questioned Officer Bain about his phone number being known to the movant and whether the movant had previously provided him with prostitutes and alcohol. Counsel questioned Bain extensively about errors in his police reports and, in closing argument impugned his capabilities by arguing that he had failed to properly follow up with evidence and questioned the credibility of his testimony. Counsel also made note of the disappearance of one of the baggies with drugs that were found on the movant. In short the entire

---

[3]Because prejudice is presumed under <u>Strickland</u>, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" <u>Freund</u>, 165 F.2d at 960, <u>citing</u>, <u>United States v. Fahey</u>, 769 F.2d 829, 836 (1st Cir. 1985).

[4]In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u>, <u>Freund</u>, 165 F.3d at 860.

defense was an attack upon the integrity of the police officers involved in the movant's arrest. This approach proved effective regarding the firearm charges as the jury found the movant not guilty of those charges. It is noted that the evidence regarding the movant's possession of the firearm was provided exclusively by Officer Bain, indicating that counsel's defense strategy of attacking his credibility was successful. On this record it cannot be said that the alleged conflict of interest interfered with counsel's performance by preventing her from presenting a defense that attacked the integrity of Officer Bain.

Furthermore, the evidence that the movant claims should have been investigated was all known to the movant at the time of trial. The record reflects that counsel did conduct an investigation, employing the services of an investigator to obtain information about Officer Bain. She used the information obtained from the investigator in her impeachment of Officer Bain. An impeachment that, as noted above, was successful.

Since the movant cannot establish that the alleged conflict interfered with counsel's performance he cannot prevail on this claim and it should be denied.

Stipulation to Nature of Substance

In his next claim the movant contends that counsel was ineffective for advising him to stipulate to the fact that the substance found was cocaine and cocaine base. He argues that by stipulating to the nature of the substance he was admitting that he possessed the cocaine.

The movant cannot establish that counsel's advise to stipulate

that the substance was cocaine and cocaine base. The movant cannot
establish how this stipulation prejudiced him at trial. He argues
that by stipulating that the substance was cocaine and cocaine base
he was admitting that he had possessed it. However the stipulation
that was presented merely acknowledged that laboratory testing of
the substances showed they were cocaine and cocaine base. The exact
language of the stipulation was as follows:

> Government Exhibit 4 includes a substance that a
> laboratory test confirms to be a substance containing
> cocaine base, commonly referred to as crack cocaine, with
> a net weight of less than 28 grams. Government Exhibit 4
> contains a substance that a laboratory test confirms to
> be cocaine. (CR-DE# 93, p. 183).

There was no stipulation that the movant possessed the substance.
It is evident that if the stipulation had not been entered the
government would have merely presented the testimony of the person
who tested the substances along with laboratory records. In fact at
sentencing this testimony was presented to establish the weight of
the drugs for sentencing purposes. (CR-DE# 122, p. 6-20).
Furthermore, the movant has not presented any evidence that the
substances were not as stipulated. Counsel's advice to stipulate
that a laboratory determined the substances where cocaine was not
unreasonable and did not constitute deficient performance or result
in prejudice to the movant.

   In his third claim, the movant claims that counsel's advice to
stipulate to the nature of the substances was a direct result of
her alleged conflict of interest. However as noted above, the
movant cannot establish either that counsel's performance was
deficient or that he was prejudiced by the stipulation. Thus, the
two claims relating to the stipulation should be denied.

Government Failure to Correct False Testimony

12

The movant contends that Officer Bain falsely testified he did not know the movant other than seeing him at a store and that the government failed to correct this allegedly false testimony. He argues that if the jury was aware that he and Officer Bain knew each other it would have supported his defense that the drugs and gun were planted.

The movant alleges the prosecutor committed a <u>Giglio</u>[5] violation when he allegedly elicited false testimony from Officer Bain. "In order to prevail on a <u>Giglio</u> claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." <u>Tompkins v. Moore</u>, 193 F.3d 1327, 1339 (11th Cir.1999).

At trial Officer Bain testified about his familiarity with the movant. (CR-DE# 96, p. 19-20). He testified that he had seen him several times around the neighborhood but did not know his name until the arrest. He noted that the movant hung out in a store where he would get coffee. On cross examination Officer Bain acknowledged that although he had not arrested the movant he had "probably seen him, run him for training purposes with my rookies, yes." He denied having any relationship with the movant. He was asked about a telephone number and acknowledged that it was his number. He was also asked if the movant had provided him with prostitutes and alcohol, a claim he denied. He was asked if he and the movant had a falling out after the movant refused to provide prostitutes and alcohol, he also denied this claim. This was the extent of Officer Bain's testimony regarding his relationship with the movant.

---

[5]<u>Giglio v. United States</u>, 405 U.S. 150 (1972).

The government argues and the movant concedes that this claim is defaulted because it was not raised on direct appeal. The movant argues that the default should be excused. He contends that the cause and prejudice exception to the procedural default exists because neither trial or appellate counsel would raise this claim.

Ordinarily, a motion to vacate under § 2255 is not a substitute for a direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro v. United States, 538 U.S. 500(2003). See also United States v. Frady, 456 U.S. 152 (1982); Lynn v. United States, 365 F.3d 1225, 1234-35 (11th Cir.2004); Greene v. United States, 880 F.2d 1299, 1305 (11th Cir.1989). A § 2255 motion is not a surrogate for a direct appeal. Frady at 152.

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the movant establishes (1) cause for not raising the ground on direct appeal and actual prejudice resulting from the alleged error, or (2) actual innocence. Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614, 622-3, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) Greene v. United States, 880 F.2d 1299, 1305 (11th Cir.1989). See also Jones v. United States, 153 F.3d 1305 (11th Cir.1998) (finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir.1992) ("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test").

14

The movant has presented nothing more than a conclusory allegation regarding cause for failing to raise this claim, stating merely that counsel was ineffective for failing to raise this claim.  He has not alleged that he was prejudiced by counsel's failure to raise this claim, although given his pro se status, it can be assumed that he is arguing that had the claim been raised it would have been reviewed and resulted in a reversal of his conviction. Since the question of prejudice is central to both the question of a procedural bar and the merits, it will be addressed in considering this claim.

The movant has failed to establish that any of this testimony was false or that the government knew it was false. The movant has not presented anything other than his uncorroborated allegation that "Bain claimed he did not know the [movant] outside of seeing him at two stores – this was false." As noted above, Bain testified that he had seen the movant around the neighborhood and had maybe "run him." This testimony was subject to cross examination. The veracity of his testimony was questioned on cross examination and through the testimony of the investigator who corroborated that the telephone number provided by the movant to counsel was in fact that of Officer Bain. Since the movant cannot establish prejudice, he can avoid the procedural bar, nor can he prevail on the merits. This claim should be denied.

Prosecutor's Closing Arguments

In his final claim the movant contends that the prosecutor's comments during closing argument denied him a fair trial. He argues that the prosecutor expressed personal opinions about the facts and the movant's guilt. He acknowledges that this claim was not raised on direct appeal but argues that counsel was ineffective for failing to object during closing argument due to the alleged

conflict of interest.

As noted with regards to the previous claim, this claim was not raised on direct appeal. The failure to raise the claim thus bars consideration unless the movant can establish cause and prejudice. Here the movant contends that counsel was ineffective for failing to object, arguing that the failure to object was due to counsel's alleged conflict of interest. Since the issue of prejudice is considered in both determining whether the procedural bar is excused and the merits of the claim, the question of prejudice will be addressed here.

The Eleventh Circuit has addressed the issue of prosecutorial comments on numerous occasions. Under its precedent the movant must establish:

> (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998). When the record contains sufficient independent evidence of guilt, any error is harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir. 1996).

United States V. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). The court summarized the standard for reviewing such claims, holding that "a prosecutor's argument violates the Constitution if it renders the defendant's trial 'so fundamentally unfair as to deny him due process.'" Davis v. Zant, 36 F.3d 1538, 1545 (11th Cir. 1994). "Thus, the [movant] must show a reasonable probability that, but for the prosecutor's statements, the result of the proceeding would have been different." Id.

16

Here the movant complains of several statements made by the prosecutor during closing argument. He claims that the prosecutor gave her personal opinion of the evidence. He provides the following examples of allegedly objectionable comments:

"He ran trying to get rid of the evidence."

"[H] was caught with crack and cocaine ready to be sold in his pocket."

"Ladies and gentlemen the defendant is guilty of the crimes charged in the indictment."

These comments are part of larger argument presented by the prosecutor. The statements in context are as follows:

Phillip MIKLE did not think that 2012 would start off so badly so quickly, and yet, when he realized that he had been spotted by a police car while driving without headlights, he completely panicked. He refused to stop and he first tried to drive away but then crashed the car in the middle of that getaway and again was spotted by the police who were right across an alleyway. So he took off running.

He ran and ran trying to escape the police as Officer Bain chased after him. **He ran trying to get rid of the evidence**, tossing his loaded gun into the grass as he tried to scape. He ran until he was confronted by Officer Solis, who had whipped around the block in a police car as Officer Bain had chased after the defendant on foot, and then Phillip Mikle was trapped. He was boxed in by two police officers and he was arrested, **caught with the crack and cocaine ready to be sold in his pocket**, caught moments after desperately tossing that loaded gun in the midst of his escape, and as he sat in the back of the police car wearing handcuffs, just a few hours into 2012, he lamented: "I'm gone, man, I'm gone. You've seen my record. I'm gone for good."

And **ladies and gentlemen, that's because this defendant is guilty of the crimes charged in the indictment.** And this indictment charges three counts, and I want to go through each one of them with you one by one.

(CR-DE# 94, p. 4-5)(Statements identified by the Movant in bold).

When placed in context it is clear that the prosecutor was not providing personal opinion, but rather was making acceptable arguments based on the evidence presented and the logical inferences to be drawn from that evidence. See United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978).

The movant provides other examples of allegedly improper comments which he argues denied him a fair trial. The first of these is the prosecutor's comment, "It makes sense that Officer Bain mistakenly and carelessly wrote drugs were found on the victim." However, the complete statement was as follows:

> **It** also **makes sense** that on that arrest report **that Officer Bain** wrote on the night of the arrest of the defendant with the assistance of Officer Solis, he accurately wrote that the drugs had been found in the defendant's pocket; but that on that summary form that he completed over a week later, where he was checking boxes, he **mistakenly and carelessly wrote that they had been found on a victim,** because he was by himself. He did not remember, because he wasn't there to witness the drugs being pulled out of the defendant's pocket. So, you should focus on the testimony of the eyewitnesses, and that testimony is the testimony of Officer Joseph and Officer Solis.

(CR-DE# 94, p. 7)(Statements identified by Movant in bold). Once again the movant has taken the statement out of context, creating an entirely new statement made of bits and pieces of an entire paragraph. As discussed above, the prosecutor was properly arguing the evidence and inferences to be drawn from the evidence.

The movant's next example also takes the prosecutor's argument out of context. He provides the following excerpt: "(Detective Tillman) has only seen a handful of times a user without a crack pipe" . . . "he told you there is no crack pipe among those items. Ladies and gentlemen, that's because these drugs were ready to be

sold. They were intending to be sold. They are packaged to be sold. They are quantities to be sold." "They are designed for sale and they were protected by a loaded gun." The actual argument was as follows:

> Now, let's move onto the second element. That second element is that the defendant intended to distribute the cocaine or the cocaine base. And here I think it's important to go over what you learned about the sale of crack and cocaine from Detective Tillman and to refer to Government's Exhibit 16-A, which is a picture of the items that were taken from the defendant on this night.
>
> Taking a look first at how these drugs are packaged, you heard they are packaged in two different color Ziplocs: The very small ones which contain the crack and the slightly larger ones containing the cocaine. And they're exactly that size for that quick hand-to-hand transaction that Detective Tillman told you about how these drugs are sold on the street.
>
> These Ziplocs are color-coded, which Detective Tillman told you is a form of street branding. The crack is in the red; the powder cocaine is in the green. This makes it easy for the users to identify the products that they like so they can buy their favorite product from their favorite drug dealer. They're also in different sizes, which Detective Tillman explained corresponds to different prices.
>
> Now, take a look at how many there are. In this case there were 24 Ziplocs of crack and four Ziplocs of cocaine. Detective Tillman told you he has never arrested a crack user with this many Ziplocs of crack, and he explained why. It's because crack users are usually addicts and they don't exercise self-control. They don't buy in bulk to save for a rainy day. It's the drug sellers who buy in bulk to get a discount. The users buy their single-use Ziploc and they smoke it right away. They don't wait because they are addicted.
>
> And this is why Detective Tillman told you that crack users usually don't also have powder cocaine, because it's taking a step down. **Detective Tillman** also told you this is why crack users always have a crack pipe with them and how in all the arrests that he's made in his

years as a detective, he **has only a handful of times seen a user without their crack pipe** and that's because they had just gotten rid of it. And when he looked at this photograph of the items that were seized from the defendant, **he told you there is no crack pipe among those items.**

**Ladies and gentlemen, that's because these drugs were ready to be sold. They were intended to be sold. They are packaged to be sold. They are in the quantities to be sold. They are designed for sale and they were being protected by a loaded gun**[.]

(CR-DE# 94, p. 9-10)(Statements identified by Movant in bold). Once again, when the comments are read in context, it is obvious that the prosecutor was not providing her opinion of the movant's guilt, but rather commenting on the evidence and the logical inferences to be  made from that evidence. This argument was entirely proper.

Since none of the comments identified by the movant were improper, counsel was not ineffective for failing to raise a non-meritorious objection. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001); United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999). In the absence of any improper comment there is no showing of prejudice and this claim should be denied as procedurally barred and for lack of merit.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts provides: "[t]he district court must issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant." If a Certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a Certificate of Appealability. Rule 11(b), Rules Governing Section 2255 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the Court deny a Certificate of Appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a Certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 14th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Phillip Mikle, pro se
     Reg. No. 98195-004
     Estill
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 699
     Estill, SC 29918

     Cristina M. Moreno, AUSA
     U.S. Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

22